SKC

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Lamar Carpenter, <br>     Plaintiff, <br> v. <br> Charles L. Ryan, et al., <br>     Defendants. | No. CV18-01631-PHX-DGC-JFM <br><br> **ORDER** |

Plaintiff Edward Lamar Carpenter, who is currently confined in the Arizona State Prison Complex (ASPC)-Buckeye, has filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18). The Court will deny the Motion in part as to Plaintiff's requests for relief for his hernia and skin cancer and will order Defendants Corizon and Russell to file a response to the part of the Motion in which Plaintiff seeks relief for his dental issues.

**I.     Background**

In his four-count First Amended Complaint, Plaintiff sued Arizona Department of Corrections (ADC) Director Charles L. Ryan, Corizon Health Services, Nurse Practitioner Lawrence Ende, Nurse LaToya Bryce, Mary Rankin, "N.P.C." Susan Thompson, and Dr. Russell for their alleged violations of his Eighth Amendment rights regarding his medical care. On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated claims against (1) Defendant Bryce in Counts One and Three related to her alleged failure

1 | to adequately treat Plaintiff's hernia-related pain and knee pain, (2) Defendant Corizon in Count One regarding its alleged failure to treat Plaintiff's hernia, and (3) Defendant Russell in Count Four regarding his alleged failure to clean Plaintiff's teeth. (Doc. 12.) The Court dismissed the remaining claims and Defendants. (*Id.*) The Court also denied in part Plaintiff's then-pending Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 2) to the extent that Plaintiff sought a Temporary Restraining Order, and it directed Defendants Corizon, Bryce, and Russell to answer the First Amended Complaint and the portion of Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order seeking a preliminary injunction.. (Doc. 12.)

Prior to Service, Plaintiff filed a Second Amended Complaint (Doc. 13) and the now-pending Amended Motion for Preliminary Injunction and Temporary Restraining Order ("Amended Motion") (Doc. 18), prompting the Court to stay service pending further order from the Court. (Doc. 14.) Following Magistrate Judge Metcalf's unopposed Report and Recommendation (R&R), the Court granted Plaintiff leave to amend and found that Plaintiff continued to state the above claims and had stated an additional claim in Count One against Defendant Ende related to Ende's alleged failure to treat Plaintiff's hernia pain. (Docs. 17, 28.) The Court ordered Defendants Corizon, Ende, Bryce, and Russell to respond to the Second Amended Complaint as set forth in the R&R. (Doc. 28.)

The Court subsequently determined that Plaintiff's Amended Motion was a duplicate of his original Motion and ordered Defendants Corizon and Bryce (hereinafter "Defendants") to file a response to the Amended Motion. (Doc. 30.) Because the Court had previously found that the Motion was unrelated to conduct of Defendants Ende and Russell, it did not require them to respond. (*Id.*)

Defendants have filed "Defendants' Special Appearance in Order to Respond to Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order" (Doc. 35), and Plaintiff has not filed a reply, although the time to do so has elapsed.

. . . .

. . . .

## II. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez,* 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials. It requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the

harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**III.    Amended Motion for Injunctive Relief**

In his Amended Motion, Plaintiff seeks a Court order directing Defendants to provide immediate treatment for his skin cancer and surgical repair of his hernia and to send him immediately to a periodontist because Dental has refused to clean his teeth for three years. (Doc. 18 at 3−4.) Plaintiff does not include any specific facts about these medical issues in his Amended Motion, Affidavit (Doc. 4), or Memorandum of Law in Support (Doc. 5).[1] In his Second Amended Complaint, however, he alleges that he was diagnosed with a hernia in 2011 and has "had to endure pain related to this injury by [Corizon] medical staff," who have refused to treat him; N.P. Ende saw him for his hernia on March 28, 2018 and said he would order Tylenol, but Plaintiff did not receive any medication; and when Plaintiff inquired about getting hernia-repair surgery, Ende told him Corizon would not spend the money, and Plaintiff would have to wait for a new contracted provider. (Doc. 13 at 3–4.)

As to his skin cancer, Plaintiff alleges that a dermatologist diagnosed him in 2016 with skin cancer and prescribed medication that Plaintiff never received; instead, the medication was only temporarily applied to Plaintiff's back at "pill call" for one or two weeks. Plaintiff's skin cancer has become "noticeably worse," and Ende said he would look into renewing Plaintiff's medication, but Plaintiff has received nothing to date. Ende has also failed to schedule Plaintiff to see a dermatologist or diagnose and prescribe needed treatments. (*Id.* at 6.)

Plaintiff also alleges that prison dental staff have refused to clean his teeth since 2015, and, as a result, his teeth have started to loosen and fall out, causing him to lose 4 teeth. Defendant Dr. Russell saw Plaintiff in June 2018 and also refused to clean his teeth, instead insisting that more teeth be pulled. Dr. Russell confirmed that Plaintiff's teeth

---

[1] Plaintiff filed these Documents with his original Motion, and the Court previously liberally construed them as supporting his Amended Motion. (*See* Doc. 30 at 2.)

- 4 -

needed deep cleaning, but did not provide this treatment, and the prison allows Plaintiff only a 2-inch toothbrush, with which Plaintiff is unable to maintain proper dental hygiene without periodic cleanings. (*Id.* at 13.)

Plaintiff argues that (1) he is suffering irreparable harm absent injunctive relief, (2) his suffering outweighs Defendants' interests in saving money, (3) he has made viable claims for relief, and (4) it is in the public interest for prisoners, including Plaintiff, to receive adequate medical care. (Doc. 18 at 2−3.) He further argues that his requests for relief extend no further than is needed to address his injuries.

**IV. Discussion**

Defendants argue that the Court should deny Plaintiff's Motion because he cannot show a likelihood of success on the merits and does not require the requested relief. (Doc. 35 at 7.)

    **A.    Hernia**

As to Plaintiff's hernia, Defendants produce evidence that Plaintiff underwent a right inguinal hernia repair in 2003, and he reported having hernia-related pain on January 8, 2016. (Doc. 35-14 at 2.)[2] Medical notes from this visit indicate that Plaintiff used a hernia belt to keep the hernia reduced, and, upon examination, his hernia was reduced. (*Id.*) On February 23, 2016, Plaintiff was provided a hernia aide. (Doc. 35-16 at 2.)[3] On March 22, 2018, Plaintiff submitted an urgent Health Needs Request (HNR) to see a provider for hernia pain and knee issues. (Doc. 35-17 at 2.) That same day, he was seen by a nurse who noted he was able to ambulate unassisted and was not in any acute distress, prescribed Tylenol, and scheduled him for the provider line. (Doc. 35-18 at 2, 5.)

Subsequently, on March 28, 2018, Plaintiff was seen by NP Ende for several issues, including hernia pain and back lesions. (Doc. 35-19 at 2.) Ende's plan notes were to

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[3] It is clear from the evidence that a hernia aide is a medical device, but it is not clear if or how a hernia aide is different from a hernia belt. (*See* Doc. 35-14.)

"reorder chemo for skin," and "Tylenol for pain." (*Id.* 4.) Ende prescribed 400 milligrams of Ibuprofen to treat Plaintiff's pain, but he did not request a surgical consult for Plaintiff's hernia because Plaintiff did not present with indications that he required emergency surgery, and Plaintiff could request a new hernia belt for improved comfort. (Doc. 35-4 (Ende Decl.) ¶¶ 9, 10.) Ende also instructed Plaintiff not to push, pull, lift, or run, as these actions can exacerbate hernia pain. (*Id.* ¶ 7; Doc. 35-21 at 2.) In Ende's opinion, the care and treatment he provided for Plaintiff's hernia was reasonable and in accordance with the standard of care. (Ende Decl. ¶ 12.)

On June 6, 2018, Ende renewed Plaintiff's prescription for Acetaminophen. (Doc. 35-22 at 2.) On October 26, 2018, NP Andreas Thude ordered Ibuprofen 400 mg for Plaintiff's hernia pain. (Doc. 35-23 at 2, 4.)

**B.     Skin Cancer**

Defendants also produce evidence that on November 22, 2014, Plaintiff received a dermatological procedure to remove invasive basil cell carcinoma, for which he was to have sutures removed in 7 days, have Efudex cream applied to his back twice a day for 4 weeks, and receive Centrum Silver vitamins. (Doc. 35-1 at 2.) On December 9, 2014, Ende saw Plaintiff in follow up, referred him to the Nursing Line for suture removal, and ordered Fluorouracil, which is a generic version of Efudex, and multivitamins in lieu of Centrum Silver, which was not available. (*Id.* at 2, 5; Ende Decl. ¶ 5.)

On October 25, 2018, NP Thude saw Plaintiff for a chronic care visit, and Plaintiff reported new lesions that had been present for several months and requested vitamin B complex, vitamin A, and Vitamin D. (Doc. 35-5 at 2.) Plaintiff had lesions on his right upper arm, left shoulder, and face, which Thude found concerning. (*Id.* at 3.) Thude requested a dermatology consult. (*Id.* at 6.) He also informed Plaintiff via a communique that the vitamins Plaintiff requested were already present in his multivitamins, and he confirmed with the pharmacy that Plaintiff was receiving an adequate dosage of multivitamins. (Doc. 35-6 (Thude Decl.) ¶ 5.) Thude also renewed Plaintiff's Fluorouracil

1  prescription, but the Fluorouracil was cancelled, so Thude prescribed Imiquimod, a similar
2  topical ointment for treating skin lesions. (*Id.* ¶ 6; Doc. 35-9.)

3  On November 15, 2018, Thude scheduled a biopsy to be completed prior to
4  Plaintiff's dermatology appointment, and on November 29, 2018, Thude took skin samples
5  from two lesions on Plaintiff's upper arms for testing. (Doc. 35-10; 35-11.) The lab test
6  results on these biopsies came back abnormal, and on December 6, 2018, Thude requested
7  and received approval for Plaintiff to have an off-site dermatology consultation. (Doc. 35-
8  12; 35-15; Thude Decl. ¶ 8.) In Thude's opinion, the care and treatment he provided for
9  Plaintiff's skin lesions was reasonable and in accordance with the standard of care. (Thude
10 Decl. ¶ 9.)

### C. Dental Treatment

Defendants have not addressed Plaintiff's dental treatment because the Court did not order them to do so, nor did it order Defendant Russell to respond to Plaintiff's Amended Motion. (Doc. 35 at 4.) This is because the Court determined that Plaintiff's Amended Motion was a duplicate of his original Motion, in which he had not sought relief related to his dental issues. (*See* Doc. 2; Doc. 30 at 1−2.) Upon further review, it appears that, for the first 3 pages of his Amended Motion, Plaintiff submitted photocopies of the first 3 pages of his original Motion, but he then substituted a partially-revised fourth and final page regarding the relief he seeks. (*Compare* Doc. 2 at 4 *with* Doc. 18 at 4.) As such, Plaintiff now seeks relief related to his hernia, skin cancer, and dental care, but he no longer seeks relief related to his knee complaints. (Doc. 18 at 4.) Because these changes were not evident at the time Plaintiff submitted his Amended Motion and the Court ordered a response to that Motion, the Court will not address Plaintiff's request to see a periodontist in this Order and will instead order Defendants Corizon and Dr. Russell to file an additional response, addressing the part of Plaintiff's Amended Motion seeking dental relief.

### D. Analysis

As to Plaintiff's requests to have his hernia surgically repaired and to receive care from a dermatologist, Plaintiff has not shown a likelihood of success on the merits, nor has

he raised "serious questions" going to the merits. For Plaintiff to succeed on an Eighth Amendment medical claim, he must show that (1) he has a serious medical need, and (2) Defendants were deliberately indifferent to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff fails to make a sufficient showing as to the second prong, that Defendant medical providers both knew of and deliberately disregarded Plaintiff's hernia pain or skin lesions.

The undisputed evidence currently before the Court shows that when Plaintiff first complained of hernia pain for which he wore a hernia belt, the nurse noted his hernia was reduced and Plaintiff was issued a hernia aide. (Doc. 35-15, -16.) When Plaintiff next complained of hernia pain in an HNR, he was seen by a nurse the same day, prescribed Tylenol, and referred to a provider. (Doc. 35-17, -18.) Then, when Defendant Ende saw Plaintiff on the provider line, Ende prescribed Ibuprofen and instructed Plaintiff to avoid exertions that could exacerbate his hernia, but determined that Plaintiff did not require hernia surgery. (Doc. 35-21.) Ende subsequently renewed Plaintiff's prescription for Acetaminophen, and, in October 2018, Thude ordered Ibuprofen for Plaintiff's reported pain. (Doc. 35-22, -23.)

The evidence also shows that Defendants Ende and Thude prescribed topical creams and multivitamins for Plaintiff's skin lesions, and when Thude noted new lesions that were concerning, he took skin biopsies, which came back abnormal, and requested a dermatology consultation, which was approved. (Doc. 35-1, -6, -9−12, -15.)

On this record, Plaintiff's general allegations that Corizon staff refused to treat him and that he did not receive his prescribed medications are insufficient to raise serious questions that any specific Defendants deliberately disregarded Plaintiff's serious medical needs.

Alternatively, even if Plaintiff could show serious questions going to the merits of his deliberate indifference claims, there is no evidence he is currently suffering or will suffer irreparable harm absent the "extraordinary remedy" of preliminary injunctive relief. Plaintiff has not produced any competent medical evidence showing he requires hernia-

repair surgery or that the hernia aide and pain relievers Defendants have provided him are inadequate. Similarly, as to his skin cancer, the evidence shows that Plaintiff is already receiving prescribed topical creams and multivitamins, has undergone skin biopsies, and has recently been approved for a dermatology consultation. On this evidence, it does not appear that a Court order for any additional relief is required. Absent a showing that Plaintiff faces an immediate threat of irreparable harm without the Court's intervention, the balance of equities and the public interest also do not tip in favor of granting preliminary injunctive relief.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18).

(2) Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18) is **denied** in part as to Plaintiff's requests for hernia surgery and dermatologist care.

(3) Within **15 days** of the date this Order is filed, Defendants Corizon and Russell must file a response to the part of Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order related to Plaintiff's dental issues. Plaintiff will have **7 days** after Defendants Corizon and Russell file their response to file his reply.

Dated this 14th day of January, 2019.

David G. Campbell
Senior United States District Judge