**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Lamar Carpenter,<br><br>    Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Defendants. | No. CV 18-01631-PHX-DGC (JFM)<br><br><br>**ORDER** |

Plaintiff Edward Lamar Carpenter, who is currently confined in the Arizona State Prison Complex (ASPC)-Lewis, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18).

The Court previously denied the Motion to the extent Plaintiff sought a Temporary Restraining Order and to the extent he sought preliminary injunctive relief as to his hernia and skin cancer, and ordered Defendants Corizon Health, Inc. ("Corizon") and Dentist Dr. Russell to file a response to the remaining part of the Motion in which Plaintiff seeks relief for his dental issues. (Doc. 44.) Defendants have since filed a Response in opposition to the Amended Motion (Doc. 49), and Plaintiff has not filed a reply, and the time to do so has passed. The Court will deny the Amended Motion for Preliminary Injunction, but will require Defendants to file a Notice regarding their compliance with Dr. Russell's treatment plan.

/ / /

**I.    Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez,* 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct

the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

## II. Amended Motion for Injunctive Relief (Dental Care)

In his Amended Motion, Plaintiff seeks a Court order directing Defendants to send him to a periodontist because Dental has refused to clean his teeth for three years. (Doc. 18 at 3−4.) In his Second Amended Complaint, he alleges that prison dental staff have refused to clean his teeth since 2015, and, as a result, his teeth have started to loosen and fall out, causing him to lose 4 teeth; Defendant Dr. Russell saw Plaintiff in June 2018 and also refused to clean his teeth, and instead insisted on pulling more teeth; Dr. Russell confirmed that Plaintiff's teeth needed deep cleaning but did not provide this; and the prison only allows Plaintiff a 2-inch toothbrush, with which Plaintiff is unable to maintain proper dental hygiene without periodic cleanings. (*Id.* at 13.)

Plaintiff argues that (1) he is suffering irreparable harm absent injunctive relief, (2) his suffering outweighs Defendants' interests in saving money, (3) he has made viable claims for relief, and (4) it is in the public interest for prisoners, including Plaintiff, to receive adequate medical care. (Doc. 18 at 2-3.) He further argues that his request for relief extends no further than is needed to address his injuries.

## III. Discussion

Defendants argue that Plaintiff cannot show a likelihood of success on the merits of his underlying claim or a likelihood of irreparable harm because he has already received appropriate dental care, and a periodontal visit is not medically indicated. (Doc. 44 at 6−8.)

### A. Plaintiff's Dental Records

Defendants produce evidence that Plaintiff saw Dr. Favela on July 31, 2015 in response to a Health Needs Request (HNR) for a routine teeth cleaning, and Dr. Favela took x-rays, hand-scaled Plaintiff's teeth to remove plaque, calculus, and stains, and diagnosed Plaintiff as having "advanced periodontitis" and other dental issues—including missing, loose, or dangling teeth—for which she advised him to submit an HNR requesting a dental exam. (Doc. 49-1 at 2−3.) Thereafter, on August 3, 2015, Plaintiff refused his

follow-up appointment and signed a "Refusal to Submit to Treatment" form, in which he acknowledged he had been advised of the potential consequences of going without treatment and was making an informed decision. (Doc. 49-4 at 2; Doc. 49-5 at 1−2.)

Approximately three years later, on March 3, 2018, Plaintiff submitted an HNR in which he reported several missing teeth and missing caps and requested that replacement teeth and caps be made. (Doc. 49-7 at 2.) He was scheduled for a dental exam on the routine care list, and saw Dental Assistant Cesar Alarcon on June 15, 2018, but refused treatment at that time because he disagreed with the recommended treatment of pulling a tooth that he wanted capped instead. (Doc. 49-11 at 2; Doc. 49-13 at 2.)

On June 22, 2018, Plaintiff saw Dr. Russell, and Dr. Russell performed a periodic exam in which he took x-rays and noted that Plaintiff had periodontitis, advanced bone loss, several teeth that required extraction, and his "prognosis [was] reduced for retaining many natural teeth," such that dentures were indicated. (Doc. 49-14 at 2−5.) Dr. Russell's treatment plan called for the extractions of teeth 11, 29, and 30. (*Id.* at 6.)

On June 28 and July 4, 2018, Plaintiff submitted two "Urgent" HNRs requesting teeth cleaning, and he was referred to dental and placed on the routine care list. (Doc. 49-15 at 2; Doc. 49-16 at 2.) On August 10, 2018, Plaintiff saw Dental Hygienist Lucero Ortiz, who performed a complete ultrasonic and hand scaling, a full mouth debridement, and periodontal charting of Plaintiff's mouth. (Doc. 49-17 at 2−4.) On this chart, Mr. Ortiz noted pus exudate from teeth 11 and 30. (Doc. 49-18 at 2.)

On September 10, 2018, Plaintiff submitted an HNR in which he complained that it had been four months since he requested a filling for a back tooth "that Dr. Russell refuses to fill." (Doc. 49-20 at 2.) He requested to be seen by a periodontist or dentist "who's [sic] goal is to save teeth not pull them." (*Id.*) On September 28, 2018, he submitted another HNR requesting a deep cleaning and "a real toothbrush to adequately brush." (Doc. 49-21 at 2.) That same day, he saw Dentist Dr. Kendrick Gray and requested to have tooth 30 "fixed and possibly a crown" because food gets trapped in the hole. (Doc. 49-22 at 2.) Dr. Gray noted that Plaintiff had no dexterity issues with his toothbrush and Dr. Gray could

not authorize an alternate toothbrush. (*Id.*) Dr. Gray took an x-ray of tooth 30 and agreed to fill the cavity to restore the tooth for as long as he could, but "emphasized that the tooth is hopeless." (*Id.* at 3.) He then filled the tooth. (*Id.* at 4.)

On December 13, 2018, Plaintiff submitted an HNR requesting another deep cleaning, "a proper toothbrush," and permanent implants to replace four teeth he had lost. (Doc. 49-23 at 2.) On December 21, 2018, Plaintiff had a follow-up appointment with Dr. Russell regarding his requests for a deep cleaning and treatment of his periodontal disease. (Doc. 49-24 at 2.) Dr. Russell assessed Plaintiff with "Cl. IV periodontal disease with advanced bone los[s], bifurcation involvement, mobility, gingival inflammation, chronic food traps & multiple teeth indicated for extraction," and noted that "retaining hopeless non-restorable teeth result in los[s] of support base/alveolar bone necessary for future dentures." (*Id.* at 3.) Dr. Russell's plan notes call for a "consult for advance[d] periodontal disease/bone lost and the impact that the disease has on the future denture base for dentures." (*Id.* at 4.)

**B.     Likelihood of Success on the Merits**

For Plaintiff to succeed on an Eighth Amendment medical claim, he must show that he has a serious medical need and Defendants were deliberately indifferent to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A "serious medical need" may be shown by "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and resulting harm. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

Plaintiff's dental records show that he has advanced periodontal disease, gingival inflammation, bone loss, and multiple non-restorable teeth recommended for extraction, and leave no doubt that Plaintiff has a serious medical need. The Court therefore looks to whether Plaintiff has shown a likelihood of success on the merits as to the second prong of his Eighth Amendment claim – that Defendants were deliberately indifferent to that need.

Defendants argue that Plaintiff fails to meet this burden because the dental records they provide show that Plaintiff has received appropriate dental care, including teeth cleaning, periodontal charting, and a full mouth debridement, and has seen the dentist multiple times regarding the status of his teeth. (Doc. 49 at 7.) They argue that the three-year gap in teeth cleanings, which Plaintiff alleges led to the loss of four teeth, was not due to their deliberate indifference, but was due to Plaintiff's own failure to request a cleaning between 2015 and 2018. (*Id.*) They also argue that there is no evidence that Plaintiff was not properly treated or that he needs to see a periodontist. (*Id.*)

The dental records Defendants produce show that Plaintiff received a thorough teeth cleaning in July 2015, at which time he was diagnosed with "advanced periodontitis," and he refused his appointment for follow-up care at that time. (Doc. 49-1 at 2−3; Doc. 49-4 at 2; Doc. 49-5 at 1−2.) While it is undisputed that Plaintiff did not receive any dental cleanings or treatment for the next three years, Defendants have shown, and Plaintiff does dispute, that Plaintiff did not request any further dental care during that time. Absent any facts that Plaintiff requested dental care after his refusal to submit to treatment, and his next request for a teeth cleaning in 2018, Plaintiff has not shown that Defendants knew of and deliberately disregarded his serious medical needs during those three years. Plaintiff is unlikely to succeed on the merits of his claim for any injuries he allegedly suffered due to this alleged lapse in dental cleanings.

The dental records further show that Plaintiff received a thorough teeth cleaning in response to an HNR on August 10, 2018, at which time Dental Hygienist Lucero Ortiz performed a complete ultrasonic and hand scaling and a full mouth debridement (Doc. 49-17 at 2−4); a filling by Dentist Dr. Gray to prolong the use of tooth 30 on September 28,

2018 (Doc. 49-22 at 3−4); and regular dental exams in which Drs. Gray and Russell advised him that he had advanced periodontitis, multiple teeth that were beyond repair, and needed to have these teeth removed to avert further harm. Dr. Russell expressly recommended extractions and possible dentures on June 22 and December 21, 2018 (Doc. 49-14 at 2-6; Doc. 49-24 at 2).

It is not clear, however, that Plaintiff ever received or was scheduled to receive the recommended extractions − or any follow-up care − based on these recommendations. Although Plaintiff's HNRs show that he clearly objected to having his teeth pulled and wanted alternative treatments − such as fillings and caps that would "fix" rather than remove his unhealthy teeth − there is no indication in Plaintiff's dental records, and Defendants provide no affidavit evidence to show, that Plaintiff refused to have his teeth pulled. The Court has not basis to conclude that Plaintiff, not Defendants, are responsible for his failure to receive this care.

Despite Defendants' failure to address Plaintiff's lack of recommended treatment, however, Plaintiff has the burden of demonstrating that he is entitled to injunctive relief, and he also has not alleged any facts showing that Defendants' actions or inactions, rather than his own refusal to submit to treatment, prevented him from receiving timely extractions or any other medically-recommended care. Absent additional facts about why Plaintiff did not receive proper follow up in response to Dr Russell's recommendations, Plaintiff fails to make a showing of deliberate indifference and is therefore unable to demonstrate that he is likely to succeed on the merits of his Eighth Amendment claim.

Additionally, to the extent Plaintiff relies on his disagreement with Dr. Russell's prescribed treatment to show deliberate indifference, this does not satisfy his burden. Mere disagreement with a medical provider's course of treatment is insufficient to show deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

**C.     Irreparable Harm**

Additionally, even if the current record raises "serious questions" going to the merits of Plaintiff's Eight Amendment claim, Plaintiff is not entitled to preliminary injunctive

relief because he has not shown he is likely to suffer irreparable harm absent a Court-ordered periodontal visit. This is because the dental records show that when Dr. Russell saw Plaintiff for his periodontal disease on December 21, 2018, he called for Plaintiff to have a "consult for advance[d] periodontal disease/bone lost and the impact that the disease has on the future denture base for dentures." (Doc. 49-24 at 4.) While this evidence belies Defendants' claim that a periodontist visit is not medically indicated, it also shows that Dr. Russell already addressed this need. Additionally, because Plaintiff has not filed a reply in support of his Motion, the Court has no basis to find that Plaintiff is in need of further relief, including by being scheduled to see a periodontist. Accordingly, the Court will deny Plaintiff's Motion without prejudice for failure to show irreparable harm.

### D. Notice Requirement

Because the Court has relied on Dr. Russell's December 21, 2018 plan notes to show that Plaintiff does not currently face a likelihood of irreparable harm, the Court will require Defendants to file a notice within 30 days of this Order indicating whether they have provided the follow-up treatment called for in Dr. Russell's December 21, 2018 treatment plan or a notice explaining why such treatment was not provided.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18).

(2) Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 18) is **denied** without prejudice as to Plaintiff's request for relief related to his dental issues.

///
///
///
///
///
///

(3) Within **30 days** of the date this Order is filed, Defendants Corizon and Russell must file a Notice indicating whether they have provided follow-up periodontal treatment for Plaintiff in accordance with Dr. Russell's December 21, 2018 treatment plan or explaining why such treatment has not been provided.

Dated this 12th day of February, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge