SKC/KM

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Lamar Carpenter, | No. CV 18-01631-PHX-DGC (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Edward Lamar Carpenter, who is currently confined in the Arizona State Prison Complex-Lewis, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's "Motion: To Add Additional Facts to Motion Sent 28 Feb 2019 Hernia, Knee & Hemroid [sic]" (Doc. 70) and "Motion: Discovery of Dental Records and Additional Facts" (Doc. 83), which the Court construes as Motions for Preliminary Injunction. The Court is also in receipt of Defendants Corizon Health, Inc. ("Corizon") and Dentist Dr. Larry Russell's "Joint Notice to Court Regarding Periodontal Treatment" (Doc. 66), to which Plaintiff has filed a Response (Doc. 67).

**I.     Background**

On screening of Plaintiff's four-count First Amended Complaint (Doc. 30) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated claims against Defendants Corizon, Nurse Practitioner (NP) Lawrence Ende, Nurse LaToya Bryce, and Dr. Russell for alleged violations of Plaintiff's Eighth Amendment rights regarding his medical and dental care. (Docs. 17, 48.)

**II.     Notice Regarding Periodontal Treatment**

On February 12, 2019, the Court denied without prejudice Plaintiff's Amended Motion for Preliminary Injunction (Doc. 18), in which Plaintiff sought relief for various medical issues, including an asserted need for urgent dental care. (*See* Doc. 55.) In denying the Motion, the Court relied in part on Dr. Russell's December 21, 2018 treatment plan for Plaintiff to receive follow-up periodontal treatment and gave Defendants Corizon and Russell 30 days to "file a Notice indicating whether they have provided follow-up periodontal treatment for Plaintiff in accordance with Dr. Russell's December 21, 2018 treatment plan or explaining why such treatment has not been provided." (Doc. 55.)

In their Notice, filed on March 13, 2019, Corizon and Russell ("Defendants") produce dental records showing that Plaintiff received the follow-up periodontal treatment Dr. Russell prescribed. (Doc. 66.) The records show that, on February 22, 2019, Plaintiff was seen by Dental Assistant Delvia Orellana for teeth cleaning. (Doc. 66-3.) He was also seen by Dentist Jose DeLossantos, who completed scaling and root planing of all four quadrants of Plaintiff's mouth based on Plaintiff's desire to keep his teeth as long as possible and discussed Plaintiff's need for extractions of teeth 29 and 30 due to mobility and bone loss, which Plaintiff indicated he understood. (Doc. 66-4.) This treatment was in accordance with Dr. Russell's December 21, 2018 treatment plan. (*See* Doc. 66-1.)

Plaintiff filed a Response to the Notice (Doc. 67), in which he largely realleges complaints about his dental care that the Court already addressed in its February 12, 2019 Order denying all of Plaintiff's requests for preliminary injunctive relief. (*See* Doc. 55.) Although Plaintiff continues to disagree with the course of dental treatment Defendants have provided going back to 2011, he does not dispute that he has received the care Dr. Russell prescribed, which was the only remaining issue from Plaintiff's Amended Motion for Preliminary Injunction (Doc. 18) still pending before the Court. Because Defendants have produced evidence that Plaintiff received this treatment, there are no remaining issues to address relative to that Motion, and no further notice or action from Defendants with respect to that Motion is required.

**III. Plaintiff's New Motions for Preliminary Injunction**

    **A. Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct

the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### B. Plaintiff's First Motion

The Court has construed Plaintiff's "Motion: To Add Additional Facts to Motion Sent 28 Feb 2019 Hernia, Knee & Hemroid [sic]" (Doc. 70) as a new motion for preliminary injunctive relief related to Plaintiff's medical concerns. (*See* Doc. 83.) As set forth in Magistrate Judge James F. Metcalf's May 3, 2019 Order, the Court will consider Plaintiff's construed Motion and his construed supplements (Docs. 62, 77) as part of that Motion when addressing the issues raised therein. (*See* Doc. 83.)

In this Motion, Plaintiff seeks a Court order directing Defendants to repair his hernia, replace the hernia mesh, perform an MRI on his knee, and assign him job accommodations that will allow him to rest and take pain medications as needed.[1]

#### 1. Hernia

Plaintiff requests that the Court order "hernia repair" and "mesh replacement . . . for the hernia." (Doc. 70 at 6.) He provides no facts in his Motion, however, about why he is requesting hernia repair or a hernia mesh replacement. In his First Amended Complaint, Plaintiff alleged that he discussed his hernia with NP Ende in April 2018, and Ende said he would provide Tylenol for Plaintiff's pain, but as of May 2, 2018, Plaintiff had not received his pain medication. (Doc. 10 at 4.) Plaintiff alleged that he also inquired about having

---

[1] Plaintiff includes facts in this Motion and supporting documents regarding his alleged skin cancer, dental, and gastrointestinal issues, for which he makes no corresponding requests for relief. Absent any requests for relief, the Court will not address these facts here. To the extent Plaintiff requests injunctive relief for these additional issues in his second Motion for Preliminary Injunction, the Court will consider these facts when addressing that Motion. Plaintiff should be aware, however, that the Court only adjudicates specific requests for relief set forth in Motions. As such, Plaintiff must clearly identify and support each request for relief in each corresponding motion. As previously explained, the Court cannot be expected to keep a running tally of allegations set forth in numerous filings that may or may not pertain to the requests for relief raised in a given motion. (*See* Doc. 83.)

surgery to repair his hernia, but Ende said Corizon was unwilling to spend money on hernia surgery. (*Id.*)

The Court already addressed Plaintiff's alleged hernia-related issues in its January 14, 2019 Order denying, in part, Plaintiff's Amended Motion for Preliminary Injunction and Temporary Restraining Order. In that Order, the Court found that Plaintiff had not shown a likelihood of success on the merits or raised "serious questions" going to the merits of his hernia-related claims as required to obtain preliminary injunctive relief. (*See* Doc. 44 at 7.) The Court also found that Plaintiff failed to produce evidence that he was suffering or was likely to suffer irreparable harm. (*Id.* at 8.) Instead, the evidence showed that Defendant Ende and non-defendant NP Thude had each examined Plaintiff's hernia, provided Plaintiff Tylenol and Ibuprofen, and instructed Plaintiff to avoid physical activities that may exacerbate his hernia. (*Id.*) Additionally, the Court found that Plaintiff did not produce any competent medical evidence showing he required hernia-repair surgery or that the hernia aide and pain relivers Defendants provided him were inadequate. (*Id.*) Absent any new facts showing he faces a threat of irreparable harm without additional care, the Court will deny Plaintiff's Motion as to his requests for hernia-related relief.

### 2. Knee/Job Issues

Plaintiff alleges he has pain in his left knee, causing him limited range of motion and back pain. (Doc. 70 at 3.) He claims that after he was reassigned to kitchen duty, Officer Velasquez ignored his medical restrictions, requiring him to work the kitchen line and rejecting his multiple requests for relief and to be permitted to take pain medication. (*Id.* at 4−5.) Plaintiff states that he alerted Lt. Wright that he was being assigned kitchen duties and was not allowed to take pain medications during his shift. (*Id.* at 5−6.) Plaintiff claims that he also wrote a letter to Deputy Warden Golder requesting an immediate job change, and Sgt. O'Halloran relieved Plaintiff from his work in the kitchen; Plaintiff states that he does not currently have a new work assignment. (*Id.* at 6; Doc. 77 at 2.)

Defendants have produced medical record evidence that Plaintiff has received appropriate care for his knee. The evidence shows that Plaintiff saw NP Ende for his knee

pain on March 28, 2019, and Ende ordered Plaintiff more acetaminophen and insoles to help alleviate Plaintiff's pain. (Doc. 84-1 at 14−16).[2] Ende also renewed Plaintiff's ADA restrictions and recommended no lifting, pushing, pulling or running for the next year. (*Id.*) Ende noted no issues with Plaintiff's knee that would necessitate a knee replacement and ordered x-rays to check for previous knee replacement. (*Id.* at 16.). According to Ende, Dr. Justin Weiss determined from his review of these x-rays that Plaintiff's knee was in excellent position, without complication; Ende therefore determined there was no indication Plaintiff needed a knee replacement. (Doc. 84-1, Ex. 4 (Ende Decl.) ¶ 7.)

With respect to Plaintiff's kitchen job, the evidence shows that on April 10, 2019, Plaintiff informed non-defendant RN Arletta that he was working more and requested a job change where he could lie down and take pain medication as needed. (Doc. 84-3 at 41.) Arletta noted in her treatment plan that she would follow up with the employment coordinator regarding Plaintiff's job limitations and special needs order (SNO). (*Id.* at 44.) According to Plaintiff, Plaintiff has since been relieved of his job and does not currently have a work assignment. (Doc. 70 at 6; Doc. 77 at 2.)

On this record, Plaintiff has not shown a risk of irreparable harm due to his alleged knee issues. The evidence shows that Plaintiff has already received acetaminophen, insoles, an ADA order, and x-rays in response to his knee complaints. Further, the x-ray results indicating that Plaintiff's knee is in excellent position without complication support Defendants' contention that an MRI is not medically indicated at this time.

Additionally, the fact that Plaintiff is no longer working in the kitchen moots any of Plaintiff's asserted needs for appropriate workplace relief. To the extent Plaintiff appears to request that the Court order that he be given a new job in line with his asserted medical limitations, Plaintiff has also not shown that he will suffer irreparable harm absent a job. Moreover, this request extends beyond the underlying claims in this action, and the Court lacks jurisdiction to order such relief. "When a plaintiff seeks injunctive relief based on

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen' s Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunctive relief is inappropriate for matters "lying wholly outside the issues in the suit."). The Ninth Circuit has found that "[t]he relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.' Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Pac. Radiation,* 810 F.3d at 633, *quoting De Beers*, 325 U.S. at 220.

Absent any grounds for ordering preliminary injunctive relief for Plaintiff's hernia, knee, and job-related complaints, the Court will deny Plaintiff's first Motion for Preliminary Injunction.

### C. Plaintiff's Second Motion

The Court has construed Plaintiff's "Motion: Discovery of Dental Records and Additional Facts" as a new motion for preliminary injunctive relief. (*See* Doc. 83.) In this Motion, Plaintiff seeks relief for (1) his gastrointestinal issues, for which he seeks a Court Order directing Defendants to provide wet wipes, tuck pads, and probiotics due to frequent stools; (2) his skin cancer, for which he seeks a Court Order that Defendants provide sunscreen, long sleeve shirts, a hat, and any prescriptions the dermatologist recommends in the future; and (3) his dental issues, for which he seeks a Court Order that Defendants provide a toothbrush, dental implants, and a future 6-month dental cleaning schedule. (Doc. 81 at 3−4)[3]

#### 1. Gastrointestinal Issues

Plaintiff alleges he suffers gastrointestinal issues due to medication he received after a dermatologist performed surgery on February 21, 2019 between his shoulders and arms,

---

[3] Plaintiff also seeks an MRI and other relief for his left knee for which he fails to provide support in this Motion, and which the Court has already addressed and denied in the previous Motion for Preliminary Injunction. The Court will not further address Plaintiff's knee-related requests here.

requiring 12 stiches and several bandage changes. (Doc. 62 at 1.) He claims that the site of the stitches became infected, and Nurse Artisan changed the bandage and gave Plaintiff prescriptions for Rocephin and Clindamycin. (Doc. 84-6 at 1.) Plaintiff alleges that the Clindamycin caused him to have frequent bloody bowel movements starting on February 26, 2019. (Doc. 70 at 1.) Thereafter, on March 21, 2019, NP DeMello saw Plaintiff for his gastrointestinal issues and hernia and found a hemorrhoid, for which she prescribed fiber pills, Tylenol, and hemorrhoid cream. (*Id.* at 1−2.) On April 1, 2019, Plaintiff alleges he saw Nurse Pluckett and told her he continued to suffer from frequent bowel movements and bleeding and had not yet received the hemorrhoid cream, which he alleges he did not receive until April 10, 2019. (*Id.*) On April 10, 2019, he states that Nurse Artisan gave him stool sample cards for testing, and she recommended probiotics, which Plaintiff states he did not receive. (Doc. 70 at 3; Doc. 77 at 1–2.) Plaintiff alleges that medical staff told him they could not give him probiotics until his stool samples had been tested. (Doc. 81 at 1.) Without the probiotics, wet wipes, or tuck pads, Plaintiff claims he is unable to alleviate the pain and discomfort from his gastrointestinal symptoms. (*Id.* at 2.)

Defendants produce evidence that Plaintiff is receiving proper treatment for his gastrointestinal complaints. The evidence shows, for instance, that on March 21, 2019, NP DeMello conducted a rectal exam in response to Plaintiff's complaints and found no abnormalities and that Plaintiff's hernia was small, did not require surgery, and there was no bleeding. (Doc. 84-1, Ex. 6 (DeMello Decl.) at ¶ 7.) DeMello prescribed Tylenol for pain; offered a suppository for Plaintiff's gastrointestinal discomfort and hemorrhoid, which Plaintiff refused; and provided collection cards and sticks for three separate stool samples, but Plaintiff failed to return these cards. (*Id.* ¶ 8.) DeMello also prescribed fiber pills, which medical records show Plaintiff began receiving the next day; and, in response to an HNR Plaintiff filed on April 4, 2019, she ordered hemorrhoid cream, which Plaintiff began receiving the next day, and which DeMello renewed on April 24, 2019; Plaintiff was also informed he was not eligible for wet wipes, which are only prescribed in rare cases, or

tuck pads, which are not prescribed to any prisoners. (*Id.* ¶¶ 17, 18; Doc. 84-3, Exs. 42−46, 49.) Further, when Plaintiff continued to complain of loose stools and pain, DeMello ordered four more stool tests, and Plaintiff provided two stool samples, which tested negative for blood. (Doc. 84-3, Ex. 47.) He later provided one additional stool sample, for which lab tests are still pending, and he never provided the fourth sample. (*Id.*, Ex. 48.) NP Ende also prescribed probiotics, which Plaintiff began receiving on April 30, 2019. (*Id.*, Ex. 51.) Although Plaintiff did not receive the wet wipes and tuck pads he requested, he has not shown that these items are medically indicated, and there is no evidence Plaintiff requires further care or testing for his gastrointestinal issues in addition to the care he has already been provided.

### 2. Skin Cancer

As to his alleged skin cancer, Plaintiff alleges that an outside dermatologist took skin grafts from Plaintiff's nose and ankle and recommended collagen, cod liver oil, and vitamins. (Doc. 77 at 2.) Plaintiff states that he has not yet been notified of the skin graft results. (*Id.*) He further alleges that NP DeMello informed him she ordered sunscreen lotion, long sleeve shirts, and a hat, but Plaintiff has not yet received any of these items. (*Id.* at 3.)

Plaintiff's complaints regarding his alleged skin cancer also do not show he faces a threat of irreparable harm absent Court-ordered relief. Defendants show, for instance, that NP DeMello requested an outside dermatology consultation for the areas on Plaintiff's nose and right ankle that she believed might require a skin biopsy, and she later ordered a dermatologist-recommended topical medication, which was filled by the pharmacy on April 4, 2019. (Doc. 84-2, Ex. 27.) Plaintiff has also been scheduled for a follow-up dermatologist consultation regarding his skin biopsies. (*Id.*, Ex. 35.) Additionally, DeMello put in an SNO for Plaintiff to receive long-sleeved shirts and informed Plaintiff that he could purchase sunscreen from the prison store, which Plaintiff agreed to do. (*Id.*, Exs. 25, 30; DeMello Decl. ¶ 6a.) Although it is unclear on the current record whether Plaintiff ever received his long-sleeved shirts or a hat, as Plaintiff claims he also requested,

1 the lack of these recommended items, on their own, does not show that Plaintiff faces a
2 threat of irreparable harm.  This is particularly so where the evidence shows, and Plaintiff
3 does not dispute, that Plaintiff can obtain sunscreen for skin protection from the prison
4 store if he chooses to do so, and he is otherwise receiving regular monitoring and treatment
5 for his dermatological needs.

### 3. Dental Issues

With respect to his dental issues, Plaintiff acknowledges that, on February 22, 2019, Nurse Orellana and Dr. DeLossantos performed a deep teeth cleaning. (Doc. 62 at 2.) Aside from this, Plaintiff merely alleges instances of past harm or disagreements with his past care, which are not grounds for preliminary injunctive relief. (*Id.* at 2−3.) *See Conn. v. Mass.*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"). Plaintiff also alleges a current need for a different toothbrush, without which he alleges he will be unable to prevent the advancement of his periodontal disease. (Doc. 77 at 3.)

As already discussed, it is undisputed that Plaintiff received a recent deep cleaning of his teeth, as recommended by Dr. Russell, and there is no evidence Plaintiff requires any further periodontal care at this time. With respect to his request for a different toothbrush, the dental records this Court has already discussed in a prior Order show that, in September 2018, Dentist Dr. Gray told Plaintiff that he could not authorize an alternate toothbrush, and Dr. Gray noted that Plaintiff had no dexterity issues that would indicate a need for a different toothbrush. (*See* Doc. 55 at 4−5; Doc. 84-5, Ex. 35.)

In summary, although Plaintiff has filed numerous Motions, "Notices" and "Supplements" regarding his medical issues since filing this action, he has not shown he is entitled to preliminary injunctive relief as to any of his pending claims. As noted, Court-ordered relief prior to a judgment on the merits is an exception and requires a plaintiff to carry the burden of persuasion on each of the *Winter* factors set forth above, including a likelihood of success on the merits and irreparable harm. Allegations of past harm, mere disagreements with medically-recommended care, or speculations of future harm, such as

Plaintiff alleges here, are insufficient to carry this burden. *See Conn.*, 282 U.S. at 674; *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F. 2d 668, 674-675 (9th Cir. 1988). Instead, Plaintiff must demonstrate a current threat of irreparable harm related to his underlying claims for which he can show he is likely to succeed on the merits. Plaintiff has not made these required showings, and the Court will deny both pending Motions.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's "Motion: To Add Additionally Facts to Motion Sent 28 Feb 2019 Hernia, Knee and Hemroid [sic]" (Doc. 70) and "Motion: Discovery of Dental Records and Additional Facts" (Doc. 81), which the Court construes as Motions for Preliminary Injunction.

(2) Plaintiff's Motions for Preliminary Injunction. (Docs. 70, 81) are **denied**.

(3) Defendants Corizon and Russell's "Joint Notice to Court Regarding Periodontal Treatment" (Doc. 66) satisfies their obligation to file a Notice that they have provided periodontal treatment for Plaintiff, as set forth in the Court's February 12, 2019 Oder (Doc. 55), and no further notice or action regarding that issue is required at this time.

Dated this 19th day of June, 2019.

David G. Campbell
Senior United States District Judge