SKC

1

2  **WO**

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Edward Lamar Carpenter,                    No.  CV 18-01631-PHX-DGC (JFM)

10                          Plaintiff,

11  v.                                         **ORDER**

12  Charles L. Ryan, et al.,

13                          Defendants.

14

15          Plaintiff Edward Lamar Carpenter, confined in the Arizona State Prison Complex

16  (ASPC)-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983.  Defendant

17  Dr. Larry Russell, DDS, moves for summary judgment.  (Doc. 136.)  Plaintiff was

18  informed of his rights and obligations to respond by December 20, 2019, pursuant to *Rand*

19  *v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 138).  On January 9, 2020,

20  Plaintiff filed a belated Response without seeking leave to do so.  (Doc. 162.)  Although

21  Plaintiff's Response is untimely and does not comply with the procedural rules, the Court

22  has considered the Response and exhibits to the extent they are relevant.  Because the Court

23  finds that summary judgment is warranted, Defendant is not prejudiced by the inability to

24  file a reply.  The Court will grant the Motion for Summary Judgment.

25  **I.      Background**

26          On screening of Plaintiff's four-count Second Amended Complaint under 28 U.S.C.

27  § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical care

28  claims against several Defendants, including a dental care claim in Count Four against

Defendant Russell based on Russell's alleged failure to clean Plaintiff's teeth.  (Docs. 12, 28.)   The Court has since granted summary judgment to all other Defendants (*see* Doc. 159).   Plaintiff's Eight Amendment claim against Defendant Russell is the sole remaining claim in this action.

## II.   Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything.  *Nissan Fire & Marine Ins. Co.*, *Ltd. v. Fritz Co.*, *Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In its analysis, the court must believe the nonmovant's evidence and draw

all inferences in the nonmovant's favor.  *Id.* at 255.  The court need consider only the cited materials, but it may consider any other materials in the record.  Fed. R. Civ. P. 56(c)(3).

**III.    Facts**[1]

On March 24, 2011, on initial intake, Plaintiff was given a dental examination in which he was found to have generalized bone loss and early/moderate periodontal disease. (Doc. 137 (Def.'s Statement of Facts) ¶ 3.)  On September 26, and October 3, 2011, Plaintiff failed to show up for scheduled dental appointments.  (*Id.* ¶ 4.)  On October 17, 2011, Plaintiff underwent a teeth cleaning.  (*Id.* ¶ 5.)

Two years later, on May 20, 2013, Plaintiff went to dental for a cleaning and underwent a full mouth debridement and hand scaled cleaning.  (*Id.* ¶ 6.)  The progress notes from this visit indicate that Plaintiff had advanced periodontitis and poor oral hygiene.  (*Id.*)

After two more years, on July 13, 2015, Plaintiff went to dental for another cleaning. (*Id.* ¶ 7.)  The progress notes document that Plaintiff had advanced periodontitis, tooth #14 had palatal root fully exposed without bone coverage, tooth #30 was very mobile and had to be held down for cleaning, and tooth #24 was dangling from the gum tissue only.  (*Id.*) Plaintiff was instructed to submit a Health Needs Request (HNR) for a dental exam, and he indicated he understood and would do so.  (Doc. 137-1 at 9.)[2]  On July 16, 2015, Plaintiff submitted an HNR, requesting "new appointment for dentist to do x[-]rays on conditions found during cleaning," and he was placed on the routine care list.  (*Id.* at 12.)

---

[1] Plaintiff did not file a controverting statement of facts, but because a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence, the Court will, where relevant, consider the allegations set forth in Plaintiff's verified Second Amended Complaint.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).  Where Defendant's facts are not clearly contradicted by Plaintiff's sworn allegations or other evidence in the record, the Court will consider those facts undisputed.

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

1        On August 3, 2015, Plaintiff refused his dental appointment and signed a refusal
2   form.  (*Id.* at 14, 16.)   As his reason, he wrote "getting out believe court response is
3   coming."  (*Id.* at 16.)

4        Nearly three years later, on June 15, 2018, Plaintiff saw Defendant for a "call back"
5   visit.  (*Id.* at 18.)  The Subjective Notes section from this visit indicates that, on March 4,
6   2018, Plaintiff presented to dental with part of the "cap" coming off his lower right molar
7   and requesting "partials," and on May 3, 2018, he submitted a request for a cleaning,
8   stating, "Need cleaning and dental work haven't been cleaned in two years."  (*Id.*)[3]

9        At the June 15, 2018 visit, Plaintiff refused treatment and signed a refusal form,
10  giving as his reason: "Don't want tooth out need care."  (*Id.* ¶ 24.)  Plaintiff alleges in the
11  Second Amended Complaint that he requested to have his teeth cleaned, and Defendant
12  confirmed that Plaintiff needed a deep cleaning but insisted, instead, on pulling his teeth,
13  thereby "exposing [him] to a vicious cycle of [his] teeth rotting or falling out because
14  Dental will not clean [his] teeth."  (Doc. 13 at 8.)

15       One week later, on June 22, 2018, Defendant saw Plaintiff for a dental exam, at
16  which time Plaintiff was given four bitewing and three panoramic x-rays.  (Doc. 137 ¶ 13.)
17  Upon examination and charting, Defendant noted that Plaintiff had advanced periodontal
18  disease and indicated several teeth that required extraction.  (Doc. 137-1 at 27.)  Under his
19  Assessment Notes, Defendant noted class III-IV periodontal disease with advanced bone
20  loss and mobility and that the prognosis was "reduced for retaining many natural teeth."
21  (*Id.* at 27.)  Defendant's treatment plan called for FMD (full mouth debridement) and
22  extractions of teeth 30, 11, and 29.  (*Id.* at 29.)

23

24  _____

25      [3] Defendant claims that from August 3, 2015 to March 3, 2018, Plaintiff's records
26  do not show he filed any HNRs.  (Doc. 137 ¶ 11.)  But Defendant does not provide any
    facts regarding how these records are kept or an affidavit from anyone who searched
    Plaintiff's records and is competent to make this claim.  The only evidence Defendant cites
27  is the record of Plaintiff's June 15, 2018 dental visit, showing that Plaintiff requested dental
    care on March 3, 2018 and May 3, 2018.  (Doc. 137-1 at 18.)  This evidence does not show
28  what transpired before these dates.  Whether Plaintiff requested dental care during the prior
    three-year period is a question of fact that the Court must resolve in Plaintiff's favor.

On July 4, 2018, Plaintiff submitted an HNR, marked "URGENT QUIT REFUSING ME TREATMENT." (*Id.* at 31.) He requested "emergency teeth cleaning w/ prior antibiotic treatment." (*Id.*) He wrote: "Why are you deliberately refusing to provide me adequate dental care to help save my teeth from rotting.  I'm relying on you the only dental option I have in prison.  See you in court, federal civil case # Cv-01631-DGC-JFM." (*Id.*)

On August 10, 2018, Plaintiff was seen in dental for a routine teeth cleaning in response to his March 4, 2018 HNR.  (*Id.* at 33.)  Dental Hygienist Lucero Ortiz noted "[l]ocalized moderate calculus plaque and stain on lower teeth, and #11−13, pus exudate from #11, 30." (*Id.* at 34.)  She charted missing teeth at 1, 3, 4, 10, 12, 14, 16, 17, 21, 24, 28, and 32.  (*Id.* at 36.)

On September 12, 2018, Plaintiff filed an HNR, stating,

> 4 months now!  On a request to filling back tooth that Dr. Russell refuses to fill[.]  Yes you cleaned my tooth on 8/10/18 after 3 years of waiting[.]   A tooth being filled is not a cleaning[.]  Schedule me now.  To have this tooth filled or refer me to peri[o]dontist a dentist whose goal is to save teeth not pull them.

(Doc. 137-1 at 38.)

On September 28, 2018, Dentist Dr. Kendrick Gray saw Plaintiff for routine treatment in response to his HNR.  (*See id.*)  Dr. Gray noted that Plaintiff went "on and on" about his pending lawsuit, accusing dental of letting his teeth "go awry over the past seven years" and of not providing a proper toothbrush or deep cleanings.  (*Id.*)  Plaintiff pointed at tooth #30 and stated he wanted the tooth fixed and possibly a crown because food gets trapped inside.  (*Id.*)  Dr. Gray took an x-ray of tooth #30, and determined

> [a]fter evaluation of patient's x-rays and the intra-orally, #30 is hopeless.  It exhibits extreme hypermobility and bone loss. The buccal roots are exposed but patient reports no symptoms. Patient has overall poor hygiene.  Patient had advanced bone loss back in 2011 as well per x-rays.  Patient persistent about getting a regular toothbrush, but it doesn't appear he was able to exercise good oral hygiene even when he had access to a regular toothbrush.   I have seen [prisoners] with advanced periodontal   disease   exercise   good   oral   hygiene   with   the

1

2

> toothbrushes given at ADC.  Considering level of plaque,
> calculous BU, patient does not appear to have made any efforts
> towards good oral hygiene.

3 (*Id.* at 39.)  In his Assessment Notes, Dr. Gray wrote that he could not authorize an alternate

4 toothbrush and that Plaintiff did not appear to have any dexterity issues that would require

5 one.  (*Id.*)  He agreed to fill tooth #30 and did so to restore it to use as long as possible, but

6 he emphasized to Plaintiff that the tooth was hopeless.  (*Id.* at 39, 40.)

7 On December 21, 2018, Defendant saw Plaintiff for follow up regarding Plaintiff's

8 advanced periodontal disease.  (Doc. 137 ¶ 18.)  Defendant assessed Plaintiff with class IV

9 periodontal disease with "advance[d] bone los[s], bifurcation involvement, mobility,

10 gingival inflammation, chronic food traps & multiple teeth indicated for extraction.

11 Furthermore, retaining hopeless non-restorable teeth result[s] in los[s] of support

12 base/alveolar bone necessary for future dentures."  (Doc. 137-1 at 43.)  Defendant's Plan

13 Notes called for Plaintiff to have a "[c]onsult for advance[d] periodontal disease/bone

14 los[s] and the impact that the disease has on the future denture base for dentures."  (*Id.* at

15 44.)

16 On February 22, 2019, Plaintiff saw Dentist Jose De Los Santos for an "urgent care

17 follow up from [a] previous appointment."  (Doc. 137-1 at 45.)  Plaintiff underwent a

18 scaling and root planing of all four quadrants of his mouth and was given a Chlorohexidine

19 rinse, which Dr. De Los Santos noted was "[t]o facilitate Patient's desire to at least give

20 his lower right posterior teeth a chance to hold on longer, even though it was explained to

21 him that there is no bone holding teeth #s 29, 30, 31, ".  (Doc. 137 ¶ 19; Doc. 137-1 at

22 45−46.)  Dr. De Los Santos assessed "localized severe chronic periodontitis w/ class III

23 mobility of teeth #s 29, 30."  (Doc. 137-1 at 45.)  He reiterated, and Plaintiff acknowledged,

24 that Plaintiff would eventually need extractions of teeth #s 29, 30 due to severe mobility

25 and bone loss.  (*Id.* at 46.)

26 **IV.   Discussion**

27 To prevail on an Eighth Amendment medical care claim, a prisoner must

28 demonstrate that a defendant acted with "deliberate indifference to serious medical needs."

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong.  For the objective prong, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted).  A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).  Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

For the subjective prong, a prisoner must show that the defendant's response to that need was deliberately indifferent.  *Jett*, 439 F.3d at 1096.  An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need.  *Jett*, 439 F.3d at 1096.  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  "A difference of opinion does not amount to deliberate indifference

to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

**A.     Serious Medical Need**

Defendants do not argue that Plaintiff's advanced periodontal disease was not a serious medical need, and the record evidence leaves no doubt that Plaintiff suffered from severe bone loss and tooth mobility, which several dental providers found serious enough to require hand scaling, full mouth debridement, tooth extractions, and possible future dentures. Plaintiff had a serious medical need, and the relevant question is whether Defendant was deliberately indifferent to that need.

**B.     Deliberate Indifference**

Plaintiff's deliberate indifference claim is based on Defendant's alleged insistence in June 2018 that Plaintiff have teeth pulled rather than having his teeth cleaned. (Doc. 13 at 8.) Defendant has produced sufficient evidence to make an initial showing that he was not deliberately indifferent to Plaintiff's serious medical needs in June 2018, the only times he saw Plaintiff or provided dental treatment to him before July 16, 2018, when Plaintiff filed his Second Amended Complaint.

The evidence shows that Defendant first saw Plaintiff on June 15, 2018, in response to Plaintiff's March 4 and May 3, 2018 requests for a deep cleaning and dental work. (*See* Doc. 137-1 at 18.) There is no evidence Defendant provided Plaintiff dental care before this, was aware of Plaintiff's dental complaints, or had any role in scheduling Plaintiff's

1    cleanings and dental exams.  Moreover, it is undisputed that when Defendant saw Plaintiff
2    on June 15, 2018, Plaintiff refused treatment and signed a refusal form, stating: "Don't
3    want tooth out need care."  (*Id.* at 24.)  This evidence does not demonstrate that Defendant
4    refused to treat Plaintiff or deliberately disregarded his serious dental needs.

5         It is also undisputed that one week later, on June 22, 2018, Defendant saw Plaintiff
6    and took x-rays of Plaintiff's mouth, conducted a full dental exam, and noted that Plaintiff
7    had advanced periodontal disease with several teeth requiring extraction.  (Doc. 137 ¶ 13;
8    Doc. 137-1 at 27.)  Defendant called for Plaintiff to have a full mouth debridement and
9    three extractions.  (Doc. 137-1 at 29.)  This evidence shows that Defendant responded to
10   and did not deliberately disregard Plaintiff's serious dental needs.  Further, it is undisputed
11   that Plaintiff saw Dental Hygienist Lucero Ortiz for a routine cleaning on August 10, 2018,
12   and no evidence that Defendant prevented Plaintiff from receiving such care.  (*See id.* at
13   33.)

14        The only other time Defendant provided dental care to Plaintiff was on
15   December 21, 2018, when he saw Plaintiff for follow up on his periodontal disease.
16   (Doc. 137 ¶ 18.)  Defendant assessed Plaintiff with class IV periodontal disease, advanced
17   bone loss, mobility, gingival inflammation, chronic food traps, and multiple teeth that
18   required extraction. (Doc. 137-1 at 43.)  Defendant also concluded that not removing
19   Plaintiff's unrestorable teeth could further degrade the bone base needed to support
20   dentures, and called for Plaintiff to have a consult with a periodontist to evaluate his bone
21   loss and the impact his advanced periodontal disease would have on future dentures.  (*Id.*
22   at 44.)  These findings comport with those made by Dr. Gray before this visit and by Dr.
23   De Los Santos thereafter, and do not show that Defendant refused to treat Plaintiff's serious
24   dental needs or that his recommendations were deliberately indifferent to those needs.

25        Because Defendant has satisfied his initial burden of showing that he was not
26   deliberately indifferent, the burden shifts to Plaintiff identify evidence that would create a
27   genuine issue of material fact on this issue.  Nothing in Plaintiff's Response or its various
28   attachments satisfies this burden.  Plaintiff merely argues, without support, that Defendant

"has caused more than one inmate to lose teeth," and that, as a doctor, Defendant was required to "look for ways to stop disease, treat it at its root, [and] control it," and he "did none of these." (Doc. 162 at 2.)  Plaintiff appears to argue, without any medical evidence, that Defendant could have done more to save Plaintiff's teeth, even though Defendant and both Drs. Gray and De Los Santos, who also examined Plaintiff within the same general timeframe, determined that they were beyond repair.  Moreover, the evidence shows that Defendant concluded that trying to save Plaintiff's unrestorable teeth could cause further harm due to ongoing bone loss, which could prevent Plaintiff from having dentures, and Defendant therefore referred Plaintiff to a periodontist for further evaluation.[4]

The allegations in Plaintiff's Second Amended Complaint also fail to create a genuine issue of material fact that Defendant's dental treatment and recommendations were deliberately indifferent to Plaintiff's serious dental needs.  Plaintiff alleges that, when he saw Defendant in June 2018, he requested to have his teeth cleaned and Defendant instead insisted on pulling his teeth, thereby contributing to the worsening of Plaintiff's periodontal disease. (Doc. 13 at 8.)  Taking as true that Defendant refused to provide a teeth cleaning on June 15, 2018, when Plaintiff refused treatment, or on June 22, 2018, when Defendant provided a full dental exam, this fact does not create a genuine issue of material fact that Defendant acted with deliberate indifference.  It is undisputed that when Defendant examined Plaintiff's teeth on June 22, 2018, he recommended a full mouth debridement in addition to extractions.  It also is undisputed that Plaintiff received a teeth cleaning from Dental Hygienist Lucero on August 10. 2018.  There is, therefore, no evidence that Defendant failed to provide proper dental exams or kept Plaintiff from receiving proper

---

[4] In addition to his arguments in the body of his Response—most of which pertain to the care he received from dismissed Defendants Corizon and Nurse Practitioners Boyce and Ende—Plaintiff attaches a duplicate of the Controverting Statement of Facts he previously filed in response to Defendants Corizon, Boyce, and Ende's Motion for Summary Judgment, which the Court already granted, an unauthorized sur-reply to those Defendants' Reply, and an unauthorized "Supplement" of case law, also in apparent support of denying the earlier Motion for Summary Judgment. (*See* Doc. 162.) Only pages 1 to 3 of the Response appear to address this Motion for Summary Judgement.

cleanings.  Plaintiff's insistence that Defendant try to repair the teeth that Defendant found beyond repair shows only a difference of opinion between Plaintiff and Defendant about what constituted proper dental treatment, which is insufficient to show deliberate indifference.  *Sanchez*, 891 F.2d at 242.  Additionally, all three dentists who examined Plaintiff's teeth opined that the teeth Plaintiff wanted treated could not be saved, and Defendant further opined that they needed to be pulled to prevent further bone loss.  Absent any contrary evidence from which a reasonable jury could find that Defendant failed to provide appropriate care for Plaintiff's serious dental needs, Plaintiff's Eighth Amendment claim fails as a matter of law.  The Court will grant summary judgment to Defendant.

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is **withdrawn** as to Defendant Russell's Motion for Summary Judgment (Doc. 136), and the Motion is **granted.** Defendant Russell is **dismissed** with prejudice.

(2)    The action is **terminated** with prejudice.  The Clerk of Court must enter judgment accordingly.

Dated this 29th day of April, 2020.

David G. Campbell
Senior United States District Judge